### MECHANICS' TRUST CO. OF HARRISBURG, PA., v. ENSMINGER LUMBER CO. et al.

Circuit Court of Appeals, Third Circuit.
July 25, 1928.

No. 3653.

1. Receivers ⚖️108—Additional receivers held not chargeable for original receivers' failure to account.

Additional receivers appointed to continue business of lumber company were not chargeable with sums of money received, or which should have been received, by original receivers, and for which they failed to account.

2. Receivers ⚖️202—Court, on exceptions to report of additional receivers of company, could not go back of first receivers' report, which had been confirmed.

On exceptions to final report of additional receivers of lumber company, court could not go back of report of original receivers, which had been confirmed when exceptions thereto were withdrawn after hearing.

3. Receivers ⚖️108—Additional receivers, exercising honest judgment in completing construction contracts entered into by predecessors, held not chargeable with resulting incidental loss.

Additional receivers of lumber company, authorized to carry on company's business, held not chargeable, on exceptions to final account, with loss incurred in completing construction contracts entered into by former receivers, where additional receivers exercised honest judgment in deciding to complete construction contracts, and were free from fraud or gross negligence.

4. Receivers ⚖️128—Payments by additional receivers for labor and materials in completing predecessors' contracts did not create illegal preference over holders of receivers' certificates.

Payments by additional receivers for labor and material in completing buildings, in accord-

ance with contracts entered into by original receivers for lumber company, did not create illegal preference over holders of receivers' certificates given first preferred claim on moneys and property in receivers' hands, where payments were necessary to complete contracts and save expenditures already made.

**5. Receivers ⟨⟩201—Receivers of lumber company in final account were required to state clearly what disposition was made of assets set out in their first account.**

Additional receivers, appointed to carry on business of lumber company, were required to clearly state in final account what became of assets set out in their first account, as to whether they had been sold, collected, or were uncollectible.

**6. Receivers ⟨⟩201—Additional receivers were required to give detailed statement of expenditures, and final account, which failed to itemize expenditures, was insufficient.**

Additional receivers of lumber company, in rendering final account, were required to give accurate and full information by itemized account during period of their receivership, and account which listed together expenditures for auctioneer's fees and cost of advertising and printing pamphlets for sale of personal property, and expenses for erecting millwork at two different buildings, was insufficient.

Appeal from the District Court of the United States for the Middle District of Pennsylvania; Albert W. Johnson, Judge.

Final account of W. F. Sperring and another, as additional receivers of the Ensminger Lumber Company, to which the Mechanics' Trust Company of Harrisburg, Pa., filed exceptions. The exceptions were overruled by the master, and from the decree of the District Court, dismissing exceptions to the master's report, the Trust Company appeals. Reversed, with directions.

Paul G. Smith and John R. Geyer, both of Harrisburg, Pa. (Nauman & Smith, of Harrisburg, Pa., of counsel), for appellant.

Spencer G. Nauman and William S. Snyder, both of Harrisburg, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court dismissing exceptions to the master's report.

On February 7, 1913, a bill was filed in the District Court against the Ensminger Lumber Company, in which it was alleged that the company was insolvent, in that it was unable to meet its obligations as they became due. The company filed an answer, wherein it admitted the averments of the bill, and thereupon W. H. Stevenson, of Lock Haven, and Arthur W. Kent, of Philadelphia, Pa., were appointed receivers of the company. They were authorized to continue the business of the company, and directed to file an inventory of its assets and liabilities within 20 days, and thereafter report to the court from time to time. They filed the inventory on February 26, 1913, showing the assets of the company to be $75,108.86 and the liabilities $71,870.79.

On May 5, 1913, the court gave the receivers authority to borrow $25,000 on receivers' certificates, and made them, if not previously redeemed, "a first preferred claim upon all moneys and property in the hands of the receivers upon a final settlement of their accounts." These certificates were purchased by the Commonwealth Trust Company of Harrisburg at par. They were due May 1, 1914, but were renewed for another year. The receivers filed their first report on April 23, 1914. This was confirmed on July 2, 1914. On that day the court authorized them to borrow $10,000 more on second receivers' certificates, making them a lien on the assets of the company, but subject and second to the first certificates of $25,000. These second certificates were purchased by the Mechanics' Trust Company of Harrisburg, the appellant, and their nonpayment occasions the controversy here.

On May 28, 1915, the receivers filed their second report, covering a period from March 1, 1914, to February 28, 1915. This report showed a loss of $12,067.01, which, however, did not include the salary of the receivers. Exceptions were filed to this report by W. F. Sperring, who was then and is now a creditor of the defendant company, and later became one of the two additional receivers. Other creditors joined him in filing these exceptions. On September 8, 1915, after hearing the exceptions were withdrawn and the report was confirmed.

At this meeting a number of creditors filed a petition, asking the court to direct a sale of the property; but as the report filed that day by the receivers showed a monthly profit from March 1, 1915, to August 1, 1915, aggregating about $2,800, the sale was not ordered. The reported profit, however, turned out to be a mistake.

It was reported to the court at this meeting that the receivers had been offered contracts to erect the Rudolph Hotel at Atlantic City, N. J., and an apartment house at Fifteenth and Locust streets, Philadelphia, Pa. It appeared that these contracts would prove profitable, and so the court directed

the receivers to enter into them. Mr. Stevenson resigned as receiver on the day of the meeting. Mr. Kent, who was left sole receiver, went ahead and secured the contracts for erecting the two buildings, but some time thereafter became very ill, and during his illness it was discovered that, instead of making a profit, as had been anticipated, he had actually sustained a loss of approximately $17,000 that year.

On April 14, 1916, shortly after the loss was discovered, W. F. Sperring and Horace A. Chayne were appointed additional receivers, with directions to wind up the business of the company immediately. They did not, however, take charge until April 30, 1916, and thereafter Mr. Kent did not perform any duties as receiver. Messrs. Sperring and Chayne filed their first report on July 24, 1916, in which, among other things, they showed that there had been a loss of $18,750.49 in carrying on the business by Mr. Kent from March 1, 1915, to April 30, 1916. This report contained a statement of the assets and liabilities of the company as of April 30, 1916. From July 24, 1916, they did not file a report until August 20, 1920, when they filed their final account. This account showed cash receipts of $102,127.83 and cash disbursed of $77,-165.76, and a balance of $24,962.07 for distribution.

The Mechanics' Trust Company, holder of the second receivers' certificates for $10,000, filed exceptions to this account. On September 12, 1921, the court referred them to Charles C. Stroh, Esq., as master. He did not pass upon them and file his report until September 14, 1926, five years after his appointment. At that time he overruled the exceptions, and, after the payment of certain costs, awarded the balance to the Commonwealth Trust Company on account of the first receivers' certificates. Exceptions to his report were filed. The District Court dismissed them, and sustained his findings of fact and conclusions of law. Thereupon the Mechanics' Trust Company appealed to this court.

Thirteen exceptions were filed to the receivers' account, 19 to the master's report, and 31 to the decree of the District Court. They all raise substantially the same questions. Should they have been sustained?

[1, 2] The appellant seeks to charge the additional receivers with, and to recover from them, the "sums of money which were received, or should have been received, or collected, or should be accounted for," by A. W. Kent and W. H. Stevenson, the original receivers. In the first place, we cannot go back of the report of the first receivers, which was confirmed on September 8, 1915. From that time until April 30, 1916, Mr. Kent acted alone, and during most of that time he was ill. It is not absolutely clear what was done during that period, nor just how the loss occurred. But, in any event, it seems to be established as a fact, or at least it is not denied, and perhaps cannot be, that the court was constantly kept informed of all that was done, and we do not see how the additional receivers may be held liable for what Mr. Kent did or failed to do.

[3, 4] The appellant seeks to charge the receivers with the loss incurred in completing the contracts entered into by Mr. Kent. The wisdom of completing these contracts might have been questionable, but they were entered into in good faith and with the knowledge and under the direction of the court. The master reported that it would have been more expensive to abandon them than it was to complete them. The knowledge of the court as to the conduct of the receivership is alleged to include these transactions, but the appellant says that there is no testimony to corroborate this allegation. This receivership apparently went along in a very informal way, and we have no doubt that the receivers decided to complete and did complete the contracts with the knowledge and authority of the court. Be that as it may, whether or not the contracts should have been abandoned or completed was primarily a question of judgment on the part of the receivers, and in the absence of fraud, or gross negligence, they should not be surcharged or penalized, because they may not have exercised the best judgment.

We do not think that the payment for labor and materials in completing the buildings in accordance with the contracts created illegal preferences over the certificate holders, for which the receivers should be surcharged, as contended by appellant. These payments were necessary in order to complete the contracts and save what had already been expended on them. While the certificates provided that they should be a preferred claim upon all moneys and property in the hands of the receivers upon the final settlement of their accounts, if not previously redeemed, it was contemplated that the claims for material and labor should be first paid. The evidence, in our opinion, does not sustain or justify the allegation that the receivers, "by their gross misconduct and neglect, have dissipated and

failed to account for a large amount of property, cash, or assets" for which they should account or be surcharged.

[5] The appellant further excepted to the report because the receivers, in their final account, did not charge themselves with the assets which they reported in their first account, filed May 1, 1916. This account contained a statement of the assets and liabilities of the Ensminger Lumber Company when the additional receivers were first appointed and took charge of it. But the final account is silent as to what became of the assets which they took over. The account gave the book value of the assets at that time, and also how much they actually "expected to realize" from them. The book value of the assets was stated to be $231,-384.67. The amount they "expected to realize" from these aggregated $102,811.-88. In the "Accounts Receivable," both under "Book Value" and "Expected to Realize" headings, there is an item of $31,-144.44. There is another item of $21,648.48, "overdue" and considered "doubtful."

The final account leaves the appellant in ignorance as to whether these accounts were collected in whole or in part, were a total loss, or what became of them. There are two other items in the first account of machinery, equipment, and small tools, aggregating under book value, and also under the heading of "Expected to Realize," $30,-917.08. The only possible reference to these in the final account is a statement that the receivers charged themselves with "cost received from auction sale of all millwork, frames, doors, sash, nails, tools, and machinery belonging to the Ensminger Lumber Company, $12,054.44." All of the assets set out in the first account of the additional receivers may be, and probably are, included in the sales and receipts contained in the final account. That this is so is a natural inference from some of the items it contains. But it is only an inference, and, as to other items in the first account, the final account does not give even a hint as to what became of them. The receivers should clearly state in their final account what became of the assets which they set out in their first account—whether they sold some, collected others, were unable to collect or dispose of others, and what became of them.

[6] The appellant further excepts to the account on the ground that some of the expenditures are improperly or inadequately stated. The receivers claim credit under date of November 1, 1916, for "fees of auctioneer and costs of advertising and print-

ing pamphlets of sale of personal property of company, $1,000." What part of this went to the auctioneer, and what part was expended for printing and advertising, is not disclosed. The one may be reasonable and the other unreasonable. They ask credit for the following items:

| | |
|---|---|
| Erecting millwork at Rudolph Hotel, Atlantic City, and apartment house at Fifteenth and Locust streets, Philadelphia, Pa., from May 1, 1916, to date.................... | $18,035.58 |
| Labor pay rolls in mill from May 1, 1916, to date.................... | 14,846.78 |
| Expense of operations at mill from May 1, 1916, to date............. | 3,234.06 |
| Lumber purchased to complete contracts from May 1, 1916, to date.. | 22,389.06 |

As to these appellant says: "That the account as stated and filed is not in proper form, and is not a proper statement of the account, but is only a statement of receipts and expenditures. It does not charge the accountants with assets of the estate, which are inventoried or heretofore reported as undisposed of, and the items of credit claimed, in most instances, are bulk sums for disbursements made, without indicating when, to whom, and for what, so that exceptions can definitely be filed thereto."

We think this exception must be sustained. Take, for instance, the first item of $18,035.58; how much of this was spent on the Rudolph Hotel, and how much on the apartment house in Philadelphia, how much for labor, and how much for materials, is not stated. This the appellant is entitled to know, so that it may pass judgment on the correctness of any particular item.

We think that the exceptions going back of the time when the additional receivers took charge and filed an account of the "affairs of the company" may not be sustained, but from that time on the appellant is entitled to know exactly what the receivers did. They handled money belonging in part to it. They should file an account with sufficient detail and sufficiently itemized to give the appellant accurate and full information as to their conduct of the business of this company. With this information, the appellant may or may not conclude that these additional receivers fully and faithfully discharged their duty, and will be in position to determine intelligently whether or not it should except to any specific item. The account should be sent back to the additional receivers, with directions to restate it.

The decree dismissing the exceptions to the master's report is reversed.